# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

INGER F. SHEINBAUM,

   Plaintiff/Counter-Defendant,

     v.

AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA,

   Defendant/Counter-Plaintiff, and

CNA FINANCIAL CORPORATION,

   Defendant.

Civil Action No. 09–273 (CKK)

## MEMORANDUM OPINION
(October 1, 2010)

      Plaintiff Inger F. Sheinbaum ("Sheinbaum") filed this action in the Superior Court of the District of Columbia against Defendants American Casualty Company of Reading, Pennsylvania ("American Casualty") and CNA Financial Corporation ("CNA Financial") (collectively, "Defendants") seeking a declaratory judgment that Defendants have a duty to defend her in a civil action filed against her in Superior Court (the "Feld Action") pursuant to an insurance policy issued to Sheinbaum by American Casualty. The case was removed to this Court on February 11, 2009. American Casualty then filed a counterclaim against Sheinbaum seeking a declaratory judgment that the insurance policy is void *ab initio* based on Sheinbaum's alleged material misrepresentation that she is a registered nurse or, alternatively, that the policy does not provide coverage for the Feld Action and therefore there is no duty to defend or indemnify Sheinbaum. Presently pending before the Court is Defendants' [17] Motion for Summary

Judgment, to which Sheinbaum has filed an opposition and Defendants have filed a reply. The Court has considered the parties' briefs, the accompanying exhibits, and the relevant legal authorities. For the reasons explained below, the Court shall grant Defendants' motion for summary judgment with respect to the issue of policy coverage but shall deny Defendants' motion with respect to the alleged material misrepresentation.

## I. BACKGROUND

Plaintiff Inger F. Sheinbaum is a professionally trained nurse who was educated and certified as a registered nurse in Denmark in 1972. *See* Pl.'s Opp'n, Exs. 1 (Authorization as Registered Nurse), 2 (Dep. of Inger Sheinbaum) at 15-17. According to her Danish certificate, Sheinbaum is "authorized to describe herself as a registered nurse and to practice as such with the conscientious observance of the duties incumbent upon a registered nurse." *See* Pl.'s Opp'n, Ex. 1 (Authorization as Registered Nurse). After receiving her education, Sheinbaum practiced as a nurse internationally, including work for the United States government at the U.S. Mission to the United Nations in Geneva, Switzerland, and the U.S. Embassy in Colombo, Sri Lanka. *See* Pl.'s Opp'n, Ex. 2 (Dep. of Inger Sheinbaum) at 37-39. Sheinbaum moved to the United States permanently in 1991. *Id.* at 85-86. Sheinbaum has provided, and continues to provide, registered nursing services for an organization called SOS International on medevac trips to and from Scandinavia. *See id.* at 42-48. Because Sheinbaum is not licensed as a registered nurse in the United States, she has never provided nursing services in the United States. *Id.* at 54-55. However, Sheinbaum has provided services as an "overnight companion" to patients recovering from a recent medical procedure such as surgery. According to Sheinbaum, she does not perform

any nursing-related functions when she serves as an overnight companion. *Id.* at 52.[1]

    A.    *Sheinbaum's Application for an Insurance Policy*

In 2004, Sheinbaum applied for a nurses professional liability insurance policy from American Casualty. *See* Defs.' Stmt.[2] ¶ 40. Question 1 on the application asked Sheinbaum to check one of four boxes to indicate whether she was an "RN," "LPN/LVN," "Nurse's Aide," or "Home Health Aide." *Id.* ¶ 42. Sheinbaum checked the "RN" box to indicate that she was a registered nurse. *Id.* ¶ 43. Sheinbaum also stated on the application that she is a resident of Virginia. *Id.* ¶ 46. In the application, Sheinbaum signed the following affirmation: "I have answered these questions to the best of my knowledge. I have not withheld information that would influence the judgment of the Insurance Company." *Id.* ¶ 47.

    B.    *The Terms of the Policy Issued to Sheinbaum*

American Casualty issued Nurse's Professional Liability Insurance Policy No. HPG 0273225116 (the "Policy") to Sheinbaum, providing her coverage as a registered nurse effective January 1, 2004. Defs.' Stmt. ¶ 1. The Policy was renewed for each successive policy year through at least 2008. *Id.* ¶ 3. The Policy includes a Professional Liability Coverage Part and a

---

[1] This evidence in the record regarding Sheinbaum is uncontroverted.

[2] The Court strictly adheres to the text of Local Civil Rule 7(h) (formerly Rule 56.1) when resolving motions for summary judgment. *See Burke v. Gould*, 286 F.3d 513, 519 (D.C. Cir. 2002) (finding district courts must invoke the local rule before applying it to the case). The Court has advised the parties that it strictly adheres to Rule 7(h) and has stated that it "assumes facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." [13] Scheduling and Procedures Order at 5 (May 5, 2009). Thus, in most instances the Court shall cite only to one party's Statement of Material Facts ("Stmt.") unless a statement is contradicted by the opposing party, in which case the Court may cite a party's Response to the Statement of Material Facts ("Resp. Stmt."). The Court shall also cite directly to evidence in the record, where appropriate.

Workplace Liability Coverage Part. *Id.* ¶ 4. The Professional Liability Coverage Part of the Policy provides, in pertinent part, coverage for "professional liability claims arising out of a medical incident by you or by someone for whose professional services you are legally responsible." *Id.* ¶ 5. A "medial incident" is defined as "any act, error or omission in your providing professional services which results in injury or damage." *Id.* "Professional services" are defined "those services for which you are licensed, certified, accredited, trained or qualified to perform within the scope of practice recognized by the regulatory agency responsible for maintaining the standards of the profession(s) shown on the certificate of insurance and which you perform as or on behalf of, the named insured." *Id.* ¶ 6. The profession shown on Sheinbaum's certificate of insurance is "Registered Nurse." *Id.* ¶ 7. The Professional Liability Coverage Part excludes coverage for any claim based on, arising out of, or related to "liability resulting from professional services you provide while your license or certification to practice is suspended, revoked, or no longer valid" ("Exclusion J"). Defs.' Stmt. ¶ 8. It also excludes coverage for claims based on, arising out of, or related to "any liability you have for a business or profession, including consulting services, other than that named on the certificate of insurance." *Id.* ¶ 9.

The Coverage Agreement of the Workplace Liability Coverage Part provides, in pertinent part:

> Subject to paragraph B below, we will pay all amounts, up to the Workplace Liability limit of liability stated on the certificate of insurance, which you become legally obligated to pay . . . as a result of injury or damage to which this coverage part applies . . . . The injury or damage must be caused by an occurrence that happens at the workplace during the policy period.

Defs.' Stmt. ¶ 13. The Policy defines "workplace" as "any location used by you to provide

professional services." *Id.* ¶ 14. It defines an "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in injury or damage." *Id.* ¶ 15. The Workplace Liability Coverage Part excludes coverage for claims based on, arising out of, or related to "injury or damage resulting from any professional services, placement services, or personal injury." *Id.* ¶ 16. It also excludes coverage for claims based on, arising out of, or related to "any liability you have for a business or profession . . . other than that named on the certificate of insurance," i.e., registered nurse. *Id.* ¶ 17.

      C.      The Feld Action

On March 8, 2008, Karen Feld filed a lawsuit against Sheinbaum, styled *Karen Feld v. Inger F. Sheinbaum*, Case No. 2008 CA 002002 B, in the Superior Court of the District of Columbia (the "Feld Action"). Defs.' Stmt. ¶ 18. In her complaint, Ms. Feld alleges that she is sixty years old and recently had a craniotomy to remove a brain tumor. *Id.* ¶ 19. Ms. Feld further alleges that, prior to her surgery, her doctors advised her to hire an experienced registered nurse to provide her with full-time care during her hospitalization and subsequent convalescence. *Id.* Ms. Feld alleges that in the fall of 2007, prior to her craniotomy, she hired Sheinbaum to provide the nursing care recommended by her doctors and that Sheinbaum represented to her that she was an experienced registered nurse. *Id.* Ms. Feld alleges that Sheinbaum's performance "failed to meet every relevant standard of care, and caused [Ms. Feld] continuing harm." *Id.* ¶ 20. She claims that Sheinbaum failed to perform the duties for which she was hired and that she breached her agreement to serve as Ms. Feld's nurse. *Id.* Ms. Feld alleges that she relied on Sheinbaum's representations that she was a licensed registered nurse and that these representations were false. *Id.* ¶ 21.

On September 5, 2008, Ms. Feld filed an amended complaint, in which she asserts nine causes of action against Sheinbaum: (1) return of property; (2) breach of contract; (3) fraud in the inducement; (4) fraudulent misrepresentation; (5) negligence; (6) gross negligence; (7) fraud; (8) punitive damages; and (9) violation of the D.C. Consumer Protection Procedures Act. *Id.* ¶ 27. In her answer to the amended complaint, Sheinbaum admitted that she is not a licensed, registered nurse in any jurisdiction in the United States. *Id.* ¶ 30.

On March 14, 2008, Sheinbaum's counsel wrote to American Casualty regarding the Feld Action. *Id.* ¶ 28. American Casualty contends that it was not until after Sheinbaum was sued that it realized that Sheinbaum was not licensed as a registered nurse in the United States. *Id.* ¶ 39.

## II. LEGAL STANDARD

Defendants have filed a motion for summary judgment under Federal Rule of Civil Procedure 56. Summary judgment is proper when "the pleadings, the discovery [if any] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Under the summary judgment standard, the moving party bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). In response, the non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts

showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). All underlying facts and inferences are analyzed in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

The mere existence of a factual dispute, by itself, is insufficient to bar summary judgment. *See Liberty Lobby*, 477 U.S. at 248. To be material, the factual assertion must be capable of affecting the substantive outcome of the litigation; to be genuine, the issue must be supported by sufficient admissible evidence that a reasonable trier of fact could find for the non-moving party. *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987); *Liberty Lobby*, 477 U.S. at 251-52 (the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law"). "If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted). "Mere allegations or denials in the adverse party's pleadings are insufficient to defeat an otherwise proper motion for summary judgment." *Williams v. Callaghan*, 938 F. Supp. 46, 49 (D.D.C. 1996). The adverse party must do more than simply "show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Conclusory assertions offered without any factual basis for support do not satisfy an opponent's burden to set forth "affirmative evidence" showing a genuine issue for trial. *Broaddrick v. Exec. Office of the President*, 139 F. Supp. 2d 55, 65 (D.D.C. 2001) (citing *Laningham*, 813 F.2d at 1241).

### III. DISCUSSION

There are essentially only two legal issues to be addressed in ruling on Defendants'

motion for summary judgment. First, did Inger Sheinbaum make a material misrepresentation in her application for insurance when she identified herself as an "RN"? Second, assuming she did not, does the Policy cover any of the claims asserted in the Feld Action such that Defendants have a duty to defend Sheinbaum in that action? Defendants also argue that Defendant CNA Financial is not a party to the insurance contract and therefore owes no duties to Sheinbaum. The Court shall address these issues in turn.

    *A.*    *Rescission of the Insurance Contract Based on a Material Misrepresentation*

Defendants contend that the Policy should be rescinded as void *ab initio* because Sheinbaum's indication that she was an "RN" on her application was a material misrepresentation. Under Virginia law,[3] "[a]n insurance company is entitled to rescind a policy of insurance based on a representation in the application only if it clearly proves that (1) the insured's representation in the application was untrue; and (2) the insurance company's reliance on the false statement was material to its decision to assume the risk and issue the policy." *Carolina Cas. Ins. Co. v. Draper & Goldberg, P.L.L.C.*, 138 F. App'x 542, 547 (4th Cir. 2005) (citing Va. Code Ann. § 38.2-309 and *Commercial Underwriters Ins. Co. v. Hunt & Calderone, P.C.*, 540 S.E.2d 491, 493 (Va. 2001)); *see also* Va. Code Ann. § 38.2-309 ("No statement in an application . . . shall bar recovery upon a policy of insurance unless it is clearly proved that such

---

[3] Defendants argue, and Sheinbaum does not dispute, that Virginia law governs the interpretation and enforcement of the Policy. The Court agrees that Virginia law should apply. The District of Columbia's choice-of-law rules (which this Court must apply in exercising its diversity jurisdiction) require the Court to consider a variety of factors in determining which jurisdiction has the most significant relationship to the contract, including the place of contracting, the place of negotiation, the place of performance, the location of the subject matter of the contract, the residence and place of business of the parties, and the principal location of the insured risk. *See Adolph Coors Co. v. Truck Ins. Exchange*, 960 A.2d 617, 620 (D.C. 2008). These factors overwhelmingly point to the application of Virginia law.

. . . statement was material to the risk when assumed and was untrue."). Sheinbaum does not argue that her representation was immaterial to Defendants' decision to issue the Policy,[4] but she vigorously disputes that her representation was untrue. Accordingly, the Court shall focus on the requirements for proving the untruthfulness of a statement under Virginia law.

Under Virginia law, "[a]n insurer is entitled to receive truthful and full representations from prospective insureds." *Parkerson v. Fed. Home Life Ins. Co.*, 797 F. Supp. 1308, 1315 (E.D. Va. 1992); *see also Inter-Ocean Ins. Co. v. Harkrader*, 67 S.E.2d 894, 897 (Va. 1951) ("Representations in an application for a policy of insurance should not only be true but full. The insurer has the right to know the whole truth."). "However, it is clear under Virginia law that an insured has no affirmative duty to volunteer information; rather, an insured is only required to disclose information that is asked of him." *St. Paul Fire & Marine Ins. Co. v. Jacobson*, 48 F.3d 778, 780-81 (4th Cir. 1995) (citing *Greensboro Nat'l Life Ins. Co. v. Southside Bank*, 142 S.E.2d 551, 555 (Va. 1965)). Moreover, although an insurer generally must prove only the falsity of the representations to prove that they are untrue, when "the insurer asks the insured to aver only that the representations are true to the best of the insured's knowledge and belief, the insurer must clearly prove that the insured's answers were knowingly false." *Parkerson*, 797 F. Supp. at 1315

---

[4] Defendants have produced a declaration from Michael A. Scott, an official who manages and oversees the underwriting process for nurses' professional liability policies issued by American Casualty, who avers that American Casualty would not have issued an insurance policy to someone it knew did not have a registered nursing license in the state where she practices. *See* Defs.' Mot., Ex. 1 (Decl. of Michael A. Scott) ¶¶ 1, 8. Sheinbaum has not rebutted or contradicted this statement. Materiality is a question of law, *Chitwood v. Prudential Ins. Co. of Am.*, 143 S.E.2d 915, 918 (Va. 1965), and "an underwriter's sworn statements, particularly when uncontradicted, are sufficient to demonstrate the materiality of the misrepresentation." *TIG Ins. Co. v. Robertson, Cecil, King & Pruitt*, 116 F. App'x 423, 426 (4th Cir. 2004).

9

(citing *Old Republic Life Ins. Co. v. Bales*, 195 S.E.2d 854, 856 (Va. 1973)). Generally, whether a statement is true or not and whether an untrue statement was knowingly made are questions of fact for the jury. *Id.* However, "where the record shows clearly that the insured gave statements that were not true and correct to the best of the insured's knowledge and belief, the Supreme Court of Virginia has held that a trial court errs in submitting that question to the jury." *Id.* (citing *Mut. of Omaha Ins. Co. v. Echols*, 154 S.E.2d 169, 172 (Va. 1967)).

Defendants argue that Sheinbaum's representation was knowingly false because she knew at the time of the application that she was not licensed as a registered nurse in the United States, and therefore she made a misrepresentation when she checked the "RN" box on the application for the Policy. Sheinbaum disagrees, pointing out that she is a registered nurse in Denmark and that the application did not define "RN" so as to apply only to registered nurses who are licensed in the United States. The question, then, is whether the term "RN" as used in the application clearly and unambiguously refers to a registered nurse who is licensed to practice by some jurisdiction in the United States. "Language is ambiguous when it may be understood in more than one way or when such language refers to two or more things at the same time." *Salzi v. Va. Farm Bureau Mut. Ins. Co.*, 556 S.E.2d 758, 760 (Va. 2002). Any ambiguity in the language must be construed in favor of the insured. *Res. Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 636 (4th Cir. 2005) (applying Virginia law).

The application does not define the term "RN." However, Defendants argue that Sheinbaum's representation that she was an "RN" was necessarily false because Virginia law restricts the use of the designation "RN" to persons who are licensed to practice as a registered nurse in Virginia:

> Any person who holds a license or a multistate licensure privilege to practice professional nursing in Virginia shall have the right to use the title "registered nurse" and the abbreviation "R.N." No other person shall assume such title or use such abbreviation or any other words, letters, signs or devices to indicate that the person using the same is a registered nurse.

Va. Code Ann. § 54.1-3016. The problem with this argument is that it proves too much. The application does not specifically ask in which jurisdiction Sheinbaum is licensed to practice, and Virginia law does not require her to volunteer that information. Under Defendants' theory, if Sheinbaum held a license to practice in the District of Columbia, she still could not truthfully check the "RN" box because she would not be a registered nurse as defined by Virginia law. Even if Sheinbaum violated Virginia law by stating that she was an "RN" on the application—a question this Court need not decide—that does not mean that her statement was false as a matter of law. Sheinbaum has provided evidence to show that she is a registered nurse in Denmark. There is nothing on the face of the application that indicates a geographic limitation to Virginia or even to the United States. Based solely on the application, Sheinbaum could have concluded that she was applying for professional liability insurance for services rendered in Denmark or anywhere else she may lawfully practice, which would make her representation entirely reasonable.

The parties both refer to the following definition of "registered nurse" in support of their position: "a graduate nurse who has been legally authorized (registered) to practice after examination by a state board of nurse examiners or similar regulatory authority, and who is legally entitled to use the designation R.N." *See* Pl.'s Opp'n at 9 (quoting *Dorland's Illustrated Medication Dictionary* 909 (John P. Friel ed., W.B. Saunders Co. 1985) (1900)); Defs.' Reply at 11. Defendants argue that this definition cannot be fairly read to encompass registered nurses

11

from jurisdictions outside the United States. The Court disagrees. Defendants have not shown that the plain meaning of "registered nurse" is limited those persons licensed as such within the United States. Therefore, the Court finds that the meaning of "RN" on the application is not limited to persons licensed to practice in Virginia or in any other particular jurisdiction.

Because Sheinbaum has produced evidence that she is licensed as a registered nurse in Denmark and Defendants have not produced any evidence to the contrary, the Court finds that there is no disputed issue of material fact as to Sheinbaum's credentials as a Danish registered nurse. Based on that fact, no reasonable finder of fact could conclude that Sheinbaum's representation on the Policy application was knowingly false. Accordingly, the Court finds that Sheinbaum is entitled to judgment as a matter of law on this issue, and the Court shall deny Defendants' motion for summary judgment and dismiss American Casualty's claim for rescission.[5]

### B. The Scope of the Policy's Coverage in Relation to the Feld Action

Defendants contend that they have no duty to defend the Feld Action because the Policy excludes coverage for the claims asserted therein. Specifically, Defendants argue that there is no coverage under the Professional Liability Coverage Part because (a) Sheinbaum did not hold a valid license when she rendered services to Ms. Feld; (b) Sheinbaum was engaged in a business or profession other than as a registered nurse; (c) Sheinbaum was acting as an unsupervised home healthcare aide; and (d) Sheinbaum willfully violated the law by holding herself out as a registered nurse. Defendants also argue that there is no coverage under the Workplace Liability

---

[5] In light of the Court's resolution of this claim, it need not address Sheinbaum's argument that additional discovery is necessary as to this issue pursuant to Rule 56(f).

Coverage Part because (a) the Feld Action arises out of Sheinbaum's alleged provision of (or failure to provide) "professional services"; (b) Sheinbaum was engaged in a business or profession other than as a registered nurse; and (c) Sheinbaum willfully violated the law by holding herself out as a registered nurse. Defendants further argue that the claims asserted in the Feld Action are not covered because they do not arise from a "medical incident" (Professional Liability Coverage Part) or from an "occurrence" (Workplace Liability Coverage Part). The Court shall not address all of these arguments, however, because it finds that coverage is excluded because Sheinbaum did not hold a valid license to provide services as a registered nurse.

    1.    <u>The Duty to Defend</u>

Under Virginia law, an insurer's "'obligation to defend is broader than [its] obligation to pay, and arises whenever the complaint alleges facts and circumstances, some of which would, if proved, fall within the risk covered by the policy.'" *Virginia Elec. & Power Co. v. Northbrook Property & Cas. Ins. Co.*, 475 S.E.2d 264, 265 (Va. 1996) (quoting *Lerner v. Safeco*, 245 S.E.2d 249, 251 (Va. 1978)). Thus, "an insurer's duty to defend is triggered if there is any possibility that a judgment against the insured will be covered under the insurance policy." *Bohreer v. Erie Ins. Group*, 475 F. Supp. 2d 578, 584 (E.D. Va. 2007). "Virginia and other states have adopted the Eight Corners Rule, which requires courts to look primarily at the underlying complaints and the insurance policy to determine if there is a potential for coverage." *CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 155 (4th Cir. 2009). Courts are constrained to the four corners of the complaint and may not examine additional documents, even if attached to the complaint. *See id.* at 155-56. The Eight Corners Rule "prevents courts from conducting an

13

intensive factual analysis at an early stage of the proceedings, which would only increase litigation costs and needlessly tax parties and courts before the underlying suit had barely begun." *Id.* at 155. However, "'if it appears clearly that the insurer would not be liable under its contract for any judgment based upon the allegations,' the duty to defend will not attach." *Id.* (quoting *Brenner v. Lawyers Title Ins. Corp.*, 397 S.E.2d 100, 102 (Va. 1990))

Although the Eight Corners Rule largely constrains a court's inquiry, the rules of contract interpretation remain intact. *See, e.g.*, *Salzi v. Va. Farm Bureau Mut. Ins. Co.*, 556 S.E.2d 758, 760 (Va. 2002) ("[A]n insurance policy is a contract, and, as in the case of any other contract, the words used are given their ordinary and customary meaning when they are susceptible of such construction" (internal quotation omitted)). Under Virginia law, "when interpreting a[n] [insurance] policy courts must not strain to find ambiguities . . . or examine certain specific words or provisions in a vacuum, apart from the policy as a whole." *Res. Bankshares Corp.*, 407 F.3d at 636 (internal citations omitted). For it is not a court's "function to 'make a new contract for the parties different from that plainly intended and thus create a liability not assumed by the insurer.'" *Blue Cross & Blue Shield of Va. v. Keller*, 450 S.E.2d 136, 140 (Va. 1994) (quoting *Pilot Life Ins. Co. v. Crosswhite*, 145 S.E.2d 143, 145 (Va. 1965)). However, when language "may be understood in more than one way or when it refers to two or more things at the same time," the language is ambiguous and "will be given an interpretation which grants coverage, rather than one that withholds it." *Smith v. Allstate Ins. Co.*, 403 S.E.2d 696, 697 (Va. 1991) (quoting *Am. Reliance Ins. Co. v. Mitchell*, 385 S.E.2d 583, 585 (Va. 1989)).

Although the Feld action contains nine causes of action, under the Eight Corners Rule, the Policy need only cover one of the claims to trigger Defendants' duty to defend. *See Lerner*,

14

245 S.E.2d at 251. Sheinbaum argues only that Ms. Feld's negligence claim (count five) provides a basis for coverage under the Policy because it asserts a breach of a duty to provide nursing services at the highest standard. *See* Pl.'s Opp'n at 21-22. Accordingly, the Court may analyze only the negligence cause of action and consider Sheinbaum to have conceded that the other eight causes of action are not covered under the Policy. *See Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003), *aff'd*, 98 F. App'x 8 (D.C. Cir. 2004) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.").

### 2. The Professional Liability Coverage Part

Defendants argue that there is no coverage for the Feld Action under the Professional Liability Coverage Part because the undisputed facts show that (1) Ms. Feld alleges that she was injured or damaged by Sheinbaum's acts, errors or omissions in providing registered nursing services; (2) Sheinbaum did not have a valid license to provide registered nursing services in the District of Columbia when she worked for Ms. Feld; and (3) the Policy excludes coverage for any liability arising from or related to the provision of registered nursing services without a valid license. Sheinbaum does not dispute that the allegations in the Feld Action pertain to her registered nursing services or that she did not have a valid license in the Virginia or the District of Columbia. Rather, Sheinbaum argues the Policy exclusion does not apply because she did have a valid license from Denmark when she provided services to Ms. Feld.

The exclusion at issue, Exclusion J, provides in relevant part: "We will not defend any claim for, or pay any amounts, including claim expenses, based on, arising out of, or related to . .

15

. liability resulting from professional services you provide while your license or certification to practice is suspended, revoked, or no longer valid." *See* Defs.' Mot., Ex. 3 (Policy), Prof'l Liability Coverage Part, § V(J). Sheinbaum argues that the restrictive phrase "no longer valid" does not apply to her because her Danish license was still valid. According to Sheinbaum, "[b]y its plain terms, Exclusion J does not apply where the insured has a valid license in at least one jurisdiction somewhere in the world." The Court finds that Sheinbaum's interpretation of Exclusion J is contrary to its plain meaning and unreasonable in the context of the Policy as a whole.

The purpose of Exclusion J is to exclude coverage for the practice of nursing services without a valid license. The word "valid" means "legally sufficient." Black's Law Dictionary 1586 (8th ed. 2004). Because the profession of nursing is regulated separately through licensing requirements by each jurisdiction, the validity of a nursing license is jurisdiction-specific. Therefore, it does not make sense to say, for example, that a person who is licensed only in California has a "valid" license to practice in the District of Columbia. When a nurse who is licensed only in one jurisdiction moves to another jurisdiction to practice, her license is "no longer valid." Sheinbaum's interpretation of Exclusion J would mean that Defendants agreed to provide professional liability coverage for nurses who practice anywhere in the United States or Canada (the geographic limits of the Policy) so long as *some* jurisdiction, somewhere in the world, had licensed them as a registered nurse. Sheinbaum's interpretation is contrary to the plain meaning of the exclusion and conflicts with the public policy of all the jurisdictions in the

16

United States that have established specific licensing requirements for registered nurses.[6]

Sheinbaum argues in the alternative that Exclusion J is ambiguous and that the ambiguity should be construed in her favor to permit coverage. However, the Court must not "strain to find ambiguities . . . or examine certain specific words or provisions in a vacuum, apart from the policy as a whole." *Res. Bankshares Corp.*, 407 F.3d at 636. The Court must give the provision's terms "their ordinary and customary meaning when they are susceptible of such construction." *CACI Int'l*, 566 F.3d at 158 (quoting *Salzi*, 556 S.E.2d at 760). As explained above, the "ordinary and customary" definition of "valid license" is a license that is legally sufficient for one to practice in a particular jurisdiction. Therefore, Exclusion J is not ambiguous.

Because Sheinbaum did not hold a valid registered nursing license when performing services for Ms. Feld in the District of Columbia, the Policy does not cover Sheinbaum's alleged provision of nursing services in the District of Columbia. Therefore, there is no coverage for the Feld Action under the Professional Liability Coverage Part.

### 3. The Workplace Liability Coverage Part

Defendants argue that there is no coverage for the Feld Action under the Workplace Liability Coverage Part of the Policy because (1) the Feld Action arises out of Sheinbaum's alleged provision of, or failure to provide, "professional services"; and (2) the Policy excludes coverage for claims based on "[i]njury or damage resulting from any professional services." Sheinbaum agrees that the Feld Action arises out of her provision of professional services and

---

[6] The parties agree that every jurisdiction in the United States requires that a person be licensed in order to be a registered nurse. *See* Defs.' Stmt. ¶ 50.

17

therefore argues that there is coverage under the Professional Liability Coverage Part. Sheinbaum does not argue in her opposition that there is any coverage for the Feld Action under the Workplace Liability Coverage Part. Accordingly, the Court shall treat this argument as conceded and find that the Feld Action is excluded under the Workplace Liability Coverage Part.

    4.    <u>Conclusion</u>

Because the Court finds that the claims in the Feld Action are excluded from coverage under both the Professional Liability Coverage Part and the Workplace Liability Coverage Part of the Policy, the Court shall grant Defendants' motion for summary judgment and declare that Defendants have no duty to defend Sheinbaum in the Feld Action.

    C.    *CNA Financial's Status As a Party to the Contract*

Defendants argue that CNA Financial must be dismissed a defendant in this action because there is no evidence that CNA Financial was a party to the Policy and therefore there is no evidence that it owes a duty to defend. The Court agrees. American Casualty is listed as the insurer on the Policy, not CNA Financial. *See* Defs.' Mot., Ex. 3 (Policy) at 1. Sheinbaum's only evidence that CNA Financial is a party to the Policy is the fact that American Casualty is listed as a "CNA Company" on the Policy application and that there is a "CNA" logo displayed throughout the Policy. *See* Pl.'s Opp'n at 34-35.[7] Moreover, there is no dispute that even if CNA Financial were a party to the Policy, it would owe the same duties to Sheinbaum as American Casualty. Therefore, because American Casualty has no duty to defend, CNA

---

[7] Sheinbaum argues that additional discovery is needed on this issue and therefore summary judgment is improper under Rule 56(f). However, the Court notes that Sheinbaum had an opportunity to obtain discovery on this issue but failed to do so in a timely manner in accordance with the Court's scheduling order. Therefore, the Court declines to defer its ruling on this issue pursuant to Rule 56(f).

Financial also has no duty to defend.

## IV. CONCLUSION

As explained above, the Court finds that Sheinbaum did not make a material misrepresentation that renders the Policy void *ab initio*. The Court also finds that the Policy excludes coverage for the claims asserted in the Feld Action. Therefore, the Court shall declare that neither American Casualty nor CNA Financial have a duty to defend Sheinbaum with respect to the Feld Action. For the foregoing reasons, the Court shall GRANT-IN-PART Defendants' [17] Motion for Summary Judgment with respect to Defendants' duty to defend and DENY-IN-PART the motion with respect to American Casualty's claim for rescission. This action shall be dismissed. An appropriate Order has been issued to this effect.

Date:   October 1, 2010

                                            /s/
                                    COLLEEN KOLLAR-KOTELLY
                                    United States District Judge